Good morning. Welcome and thank you for participating by video. We very much appreciate it. Good morning. Good morning. The next case is 19-20583. Ms. Hamron. Yes, thank you. May it please the court. I'm Nancy Hamron and I represent the appellant George W. Kaleh. This case deals only with issues of law and that is the interpretation of two different Texas statutes of limitations. Texas Civil Practice and Remedies Code 16.004A3 and Texas Property Code Section 51.003A. The issue in this case is whether those statutes bar the claims of Western-Southern against George Kaleh. I'm going to start first with 16.004A3 and that is the Texas General Statute of Limitations that applies to suits on a debt. It provides that a person must bring suit no later than four years after the day the cause of action accrues for an action on a debt. The question here is with respect to a claim on a guarantee, when does the cause of action accrue? More specifically, as applied to this case, the question is do the conditions preceding which apply to bringing a suit against a note maker, that is sending a notice of intent to accelerate and sending a notice of acceleration unless they're waived, do those apply likewise to a suit on a guarantee? Mr. Kaleh submits that the answer is no. Guarantees are treated as separate, distinct documents. They are not negotiable instruments, which notes are. In fact, the intent to accelerate and acceleration stem from the UCC Article 3, which apply to negotiable instruments only. This answer is relevant to the court's judgment against Mr. Kaleh for not only the principle and interest that it found Mr. Kaleh liable for under the mezzanine guarantee of roughly $2.5 million, but also for the portion of what this court and the parties are referring to as non-loan liabilities. I take issue with that because they're part of the loan, but I think the intent is non-principle and interest portions of the debt. Judge Hittner, the district court found Mr. Kaleh liable for insurance under the mezzanine guarantee at the ROA 3395, for the taxes also under the mezzanine guarantee at 3396, and the security deposits under 3397. Those three non-principle and interest items total roughly $954,000. Collectively, the answer to this issue will affect the judgment of almost $3.5 million. The facts are undisputed that relate to this. The mezzanine guarantee only required an event of default by the borrower in order for Mr. Kaleh to be liable. There is no dispute that that event of default occurred, and that was discussed in the Western Southern sent a letter to the borrowers, copied Mr. Kaleh, saying the mezzanine note is in default and you have five days to cure. So Mr. Kaleh's position is that when the cure did not happen on April 22nd, Western Southern, under the terms of its mezzanine guarantee, had the right to pursue Mr. Kaleh for those sums. The mezzanine guarantee states that upon an event of default, Mr. Kaleh will be immediately liable for not only past due sums, but all sums to become due. So the question is, is that sufficient? Could Western Southern have sued Mr. Kaleh on April 23rd? Yes. And presumably, if that had happened, Mr. Kaleh would not have a good defense that, oh, you didn't send the borrower notice of acceleration. It doesn't matter. The district court erroneously relied on three cases, Boren, Shumway, and Ogden, in concluding that Western Southern's cause of action did not accrue until Western sent a notice of acceleration in August of 09 to the borrower. Those cases all apply to note makers, not to that month that hasn't been paid. But until the note is accelerated, you can't sue the guarantor for the whole amount. Your Honor, the accrual on the debt, and the debt is the debt that is described in the guarantee. The guarantee says that all sums due and to become due are immediately due and payable by the guarantor, Mr. Kaleh, without any notice or demand. And Texas law is... But the problem is until you accelerate the debt, you're only talking about that month. That only, Your Honor, that only applies in the case of an installment note and to a note maker. Mr. Kaleh is not a note maker. He is bound by the contract that was negotiated between Western Southern and Mr. Kaleh. And the Texas case law is clear on that because... I understand there are individual defenses that a debtor can make that the guarantor can't. But at the end of the day, there still has to be the debt has to be owed. So I'm just, I'm having, here's the part that I'm having trouble with. What is it that makes the debt, the full debt owed, the whole amount, not just that particular amount from April, but what creates that whole thing being owed? It is the guarantee, Your Honor. This was not an... The full amount had already been lent. It was just a matter of when it became due and payable. The guarantee says it becomes due and payable immediately if there's a default. And so it just basically bumped up the due date. So it says the whole amount is accelerated? I mean, that's not how I read it. There's a difference between amounts and acceleration and that's a huge, a huge deal. Okay. And so that, what is accruing is the part that I'm having trouble with. Well, the liability is determined by the terms of the contract that the parties have. In this case, the mezzanine guarantee. The mezzanine guarantee says immediately upon an event of default, the full amount is due and payable. As to Mr. Cayley, that is all that is required is an event of default. There is no requirement that a notice of acceleration or notice of intent to accelerate be sent. That is only required to be sent to the note maker. And the reason for that is because the UCC considers a note a negotiable instrument and the UCC applies only to negotiable terms. So you're saying that the debtor, I'm not talking about having a defense, but the debtor could not owe the debt and the guarantor still owe it. That's your argument? When you, your honor, when you say debtor, you mean the note maker? That the note maker could- The principal debtor. Yes, yes. That is correct. And the case law says- That's your argument. And what's your best case for that argument? Well, Judge, I have three cases actually. I have the Fifth Circuit's case in 1985, the U.S. versus Little Joe's case, which holds establishing the liability of the guarantor does not first require establishing liability of a maker. Notice of intent to accelerate is not required to be given to a guarantor as opposed to a maker of a note. And a guarantor does not have the same rights as the maker to receive notice of intent to accelerate and that the rights of the guarantor are determined solely from the language of the guarantee. I've also cited two Texas appellate court cases, which I think are right on point, and that is the Mid-South versus Best case out of Austin in 2006, as well as the more recent James Construction case out of the Houston 14th Court of Appeals in December of 2019. There are other Texas Supreme Court cases which address the fact that a note is separate and distinct from a guarantee, and those are the Bastine, Moetti, and Hopkins cases. They don't necessarily get into the notice of acceleration, but the Little Joe's, I would say, is the best case on that issue. And again, I like to pose the hypothetical. Under the terms of the mezzanine guarantee, if Western had filed suit on April 23rd, could Caylee have said, no, we're not liable because you didn't take some action against the borrower? He could not have. The terms of the mezzanine guarantee govern this, and that is what the parties bargained for. That's what they negotiated for, and the terms of their agreement should govern this. The next issue I want to discuss is the Texas statute under the property code, the two-year limitations, and that's Texas Property Code 51.003a. That statute specifically states that when a lender forecloses on real property that secures debt and there is a balance, the remaining unpaid balance is barred unless suit is filed within two years of the date of foreclosure. In this case, it's undisputed the foreclosure occurred on December 1st of 2009, and suit was not filed until 2013. So the question is specifically, the questions that I'm going to address are specifically, what does the term deficiency mean? And the reason why that's one, that's the term that the statute uses, and the statute implicitly defines statute as, quote, the remaining unpaid indebtedness. It doesn't say principal and interest on a note only after applying essentially the foreclosure proceeds. Likewise, the statute doesn't differentiate between the source of the underlying obligation. I mean, a source could be a guarantee, a note, a contract. The only issue that determines whether or not 51.003a applies is whether a particular item of indebtedness is secured by the real property. And in this question, there is no doubt that the taxes, insurance, security deposits, and the lien claims, which the court found Mr. Cayley liable for under the completion guarantee, were all items that were secured by the, under the deed of trust, which is the real property in question here. So it's Mr. Cayley's position that taxes, insurance, security deposits are barred both by 16.004a3, but also by 51.003 because suit was not filed within two years, and that the lien claims likewise fall within the 51.003a bar. The district court found Mr. Cayley, there were three different guarantees here. Western Southern did a good job of making sure that Mr. Cayley was liable under various sources for different things. And the district court found that Mr. Cayley was liable for the principal and interest under the mezzanine note, as well as the taxes, insurance, and security deposits under both the mezzanine guarantee, as well as in the three items also under the construction guarantee. This court previously stated in its original opinion that items under the construction guarantee were barred. Well, the taxes, insurance, and security deposits were all items that fall within that, that guarantee. And it's not a matter of the guarantee or a note or a loan agreement. Those are just the source for the liability, but they don't address whether the item is secured. It's the deed of trust that specifically states whether the item is secured. This is not a situation where Western chose only to sue on the guarantee. It chose to foreclose on the property. And so when it foreclosed on the limitation, so the only item or the only question is whether or not particular items of indebtedness are secured by the real property. What do you do with our prior appeal and law of the case? Judge, I believe that this court specifically remanded the issue of whether it called the taxes, insurance, and security deposits, the constituent parts of the loan, and it specifically remanded those to the district court to consider whether or not they were barred by the same limitations and for the judge to consider that for the first time on remand. And so I don't think that's law of the case. I believe that was an issue that was remanded to the district court. And the last point I want to make is the Ville case from the Houston Court of Appeals in 2013 addressed a similar situation. In that case, the lender filed a suit for taxes, insurance, and security deposits, all of which were secured by the deed of trust in that case. The lender tried to argue that it was not a suit for deficiency, but rather for carve-out liabilities under a guarantee. And the court said, no, those sums are part of the indebtedness secured by the real property. Therefore, the lender's suit is a suit for deficiency, and artful pleading doesn't make it otherwise. I see I'm just about out of time, so I will stop there. Thank you, counsel. You saved time for a minute. Mr. Richardson. Thank you, your honor. Good morning, your honors. May it please the court. My name is Eric Richardson. I represent the Plaintiff Appellee Western Southern Life Assurance Company in this matter. I want to quickly address a number of the points that Ms. Hamrin had just made a moment ago. As set forth in our brief, your honors, we believe that the issues regarding 51003 have already been resolved by this court. We have cited the court to the references in the prior panel's opinion, where this court found that the claims under the completion guarantee, which is the only guarantee that actually guaranteed payment or coverage for the liens, were timely. And the court's decision is cited in our brief on that point. Additionally, with regard to appellate attorney fees, this court had also already decided that Mr. Kaley had failed to adequately challenge those. And as a result, any challenge was waived. That was actually upheld through a petition for rehearing that Mr. Kaley had cited. Also, your honors, with regard to when the cause of action accrues and whether you're looking at the guarantee, whether you're looking at the note, Mr. Kaley takes the position that it was error for the district court to actually look at the Boren decision, which, of course, focuses attention on when the underlying note was accelerated. But that's exactly what this panel had directed the district court to do in the last case. In fact, Mr. Kaley had actually argued in his response and reply brief, which we cited at page 40, that a cause of action for breach of a guarantee of a promissory note accrues when the note is accelerated and becomes due. This argument now that you only need to look at the guarantee itself is entirely new to this action. It was not pursued in the first appeal. And in fact, it was exactly the opposite, which was a decision or which was a position that this court actually took with regard to accrual. As a result, your honors, we believe that this argument is waived. We also believe that it is incorrect under Texas law and under this court's precedent. With regard to the Little Joe case, which is cited by Ms. Hamren, Little Joe ultimately decides that there is no notice required to be provided to the guarantor to be able to proceed against that guarantor. But it does not say that a guarantor can be liable before the underlying note matures or is properly accelerated. In fact, the Sol case, which is relied upon by Mr. Cayley, says that a claim against an unconditional guarantor accrues when the underlying debt reaches maturity. The Mid-States Resources Corp versus Haas, that's a Southern District of Texas case that was affirmed by this court, does a detailed analysis of Texas law and says that a guarantor is not liable until the underlying note either matures or is properly accelerated. And then we have additional cases out of the Northern District of Texas, the Investor Collection Services Limited Partnership versus Thomas, and also then, of course, the Mid-South Telecom versus Best, that you have to look to the notes terms to determine the guarantor's obligations. As Judge Hange had indicated, until the underlying note becomes due or is accelerated, the guarantor cannot have liability on it. I think the distinction that Mr. Cayley attempts to make is, since the situations where a note maker might be not liable, but a guarantor still liable, but those are very narrow circumstances, such as where I believe the Texas cases provide the examples, where there may be a forgery of the maker's signature, but the guarantor is still liable on the guarantee, or where the statute of limitations may have started to run against the note maker before they run against the guarantor. Something very limited. Nothing where the underlying note has not actually matured or has been declared in default and properly accelerated. There are no cases that have been cited to this court for that proposition, Your Honor. And as I noted, Mr. Cayley had, in fact, argued just the opposite in the prior appeal. Additionally, Your Honors, with regard to the District Court in this action, the District Court took its mandate as looking to see whether or not notices of intent to accelerate and notice of acceleration had been waived, and if not, whether or not they'd been properly provided. We believe the District Court answered that question correctly. It looked at the April 17, 2009 letter. That is the default letter regarding the mezzanine note. That letter states that if the default is not cured in five days, then Western Southern may, the precise term may, take additional steps, including acceleration. May has actually been expressly determined not to be sufficient under the Texas Authority, which we had cited in our brief, including the Texas Supreme Court's case in Ogden. Additionally, Your Honors, thereafter, there was a long period of discussion between May of 2009 and August of 2009, with several drafts of proposals for restructured debt, restructured terms, things like that, and again, with the proviso that if we're unable to reach an agreement, then Western Southern may exercise its other rights, indicating that it had not actually exercised those rights at that point in time. Indeed, up until August 11, 2009, Western Southern had taken no affirmative acts towards trying to actually accelerate. That is another requirement that this Court's decision in FDIC v. Massengill had provided, that not only must the notices be provided, but that also there must be some affirmative act taken towards enforcing the acceleration. Western Southern had taken no such steps during that period of time. In fact, they were forbearing, as the unrefuted testimony indicates from Dave Roobsome in the trial record, that Western Southern had agreed to forbear from taking any steps towards acceleration or other steps under the mezzanine guarantee or mezzanine note during that period of time while they tried to see if they could work something out. In fact, it was only on August 11 when it appeared that they were unable to be able to reach a resolution that Western Southern provided its notice that it was in fact going to accelerate. Additionally, Your Honors, with regard to the various damages that have been identified, there is the deficiency, which is the loan balance and the interest on the mezzanine note. Although Mr. Kaley takes the position that deficiency is now broad enough to include multiple other categories, the Texas Court of Appeals decision in Seoul, which is one that Mr. Kaley cites frequently, actually looks at a deficiency as the difference between the loan balance and the foreclosure proceeds and does not include in that definition the delinquent property taxes or the attorney fees as part of what it refers to as the deficiency in that section. Also, Your Honor, with regard to those, this court had determined that with regard to the to them insofar as they were independently guaranteed not only under the construction note but also under the mezzanine note. As a result, the amounts for the unpaid insurance premiums, the unpaid taxes, the unremitted security deposits that 51003 did not apply to bar those to the extent they arose independently under the mezzanine note. That is the basis for the district court's decision on remand. He had noted, Judge Hittner had noted, that the claims to the extent they arose under the construction guarantee are barred as recognized by this court in the prior decision, but that they also independently arose under the mezzanine guarantee and mezzanine note and to that extent 51003 does not apply. It is the four-year statute of grounds for why these non-loan obligations are also timely in this particular instance. The district court had noted that as to several of these particular items that Western Southern actually had no knowledge of those items or could not have been indebted to be able to pay any of those until the time of the foreclosure. So, for example, the obligation with regard to taxes, with regard to property insurance, with regard to the unremitted security deposits, which as we've cited in our brief arose when we made demand on Mr. Cayley and his partner, Mr. Buchanan, to return approximately 20,000 in security deposits that tenants had entrusted to them and then they refused to do so. That only arose in the fall of 2009. It could not have arisen in April or prior to August because demand was not even made until after we had foreclosed on the property. Additionally, some of the taxes that we've noted in our brief as well only came due at the end of that year. So, for example, 2009 taxes not being due to have to be paid until January of 2010. So, we believe, your honor, that those non-loan obligations are also independently timely because they could not have accrued at the same time as the demand with regard to the loan deficiency. Your honors, I am happy to answer any additional questions. I wanted to primarily answer the panel's questions and then to address the primary issues that we have in our brief. I'm happy to address anything else that the panel may have with regard to those points. All right. We would ask that this court affirm the district court's decision on remand, finding the entirety of the claims to be timely with regard to the two guarantees. Thank you, your honors. You need to unmute. Oh, I'm sorry. I'm unmuted now? No. Okay. Sorry about that. In the record at 4889, the mezzanine guarantees language regarding an event of default is included. And it says, this is the party's agreement. Immediately and automatically upon any event of default, without demand or notice of any kind, which demand or notice are hereby expressly waived, guarantor will pay to lender all amounts due and to become due under the obligations. All of the obligations then existing will be accelerated and become immediately due and payable in full from the guarantor, whether or not then due from the borrowers, and guarantor will pay such amounts without set off counterclaim, presentment, demand, protest, and notice of demand, which are hereby expressly waived. The courts have said that the guarantee agreement stands on its own. If that's what the parties agree to, that's what the parties agree to. With respect to Sal and Mr. Richardson's argument that Kaley has cited Sal, Kaley has cited Sal, but not for the proposition that deficiency includes only principle and interest. That court, and if the issue on appeal was not specifically what sums are included within the, quote, indebtedness secured by the real property, the issue had to do with whether the four-year statute or the two-year statute applied when the foreclosure took place close to the end of the four years, and then the lender wanted an additional two years after that. That was the issue that that court decided. With respect to the forbearance argument by Western, Your Honor, with all due respect to Mr. Richardson, I think that's a red herring because the agreement, the May 7th letter that they're relying as being a forbearance agreement is clear on its face. It's got every type of waiver that you could possibly have in there. It says that nothing in the letter will be binding until authorized representatives commit to writing an agreement, and further, that Western Southern Reserves all rights that it had. Further, Mr. Rupsom testified at trial that Western Southern never withdrew its default declaration, so I think, you know, any argument about a forbearance has no merit to it. Again, Mr. Kaley would ask his court to vacate the district court's judgment. He believes that all of the sums are barred either by the four-year statute or, alternatively, with respect to the insurance, taxes, and security deposits and lien claims, they would alternatively also and additionally be barred by 51003A. Thank you. Thank you, counsel. We have your argument and your case is under submission. That's the final argument the court will hear this morning, and we will adjourn until 9 o'clock in the morning. Thank you very much. Thank you. Thank you.